## LEONARD ERICKSON v. GREAT NORTHERN RAILWAY COMPANY AND ANOTHER.[1]

March 29, 1934.

No. 29,821.

A. L. Janes and J. H. Mulally, for appellant.

Orr, Stark, Kidder & Freeman and Warren B. King, for respondent.

[1] Reported in 253 N. W. 770.

*JULIUS J. OLSON, Justice.*

Action to recover damages for personal injuries suffered by plaintiff's minor daughter in an automobile accident which occurred in St. Paul, Sunday, July 24, 1932. When plaintiff rested the trial court granted the railway company's motion for a dismissal of the action as to it. Later the court granted a new trial for errors of law alone. It is from this order the present appeal is taken. The trial court in a memorandum attached to and made a part of its order lucidly states the situation as follows:

"The question here involved is whether or not the liability of the defendant Great Northern Ry. Co. for the acts of its servant, the defendant Johnson, should have been submitted to the jury.

"So far as called to the court's attention no similar state of facts has been passed upon by our supreme court, or in any other jurisdiction.

\* \* \* \* \* \*

"The question is both doubtful and interesting, and the hope is expressed that an appeal may be taken from this order, so as to put the matter at rest, with a minimum of expense to the litigants."

A brief summary of the facts involving the question here raised may be made as follows: Defendant Johnson has been employed by the railway company as a carman at the Mississippi street coach yards in St. Paul for a period of some 10 or 11 years. Every morning, including Sundays as well, something like 15 men go to the Union Depot to make necessary repairs on the railway company's trains. From the depot to the coach yards and from the coach yards back to the depot these men were transported by means of a bus provided by the railway company, which bus accommodated the entire crew. It appears that Johnson used this bus regularly on week days; but on most Sundays, perhaps something like 30 or 40 Sundays of each year, because of the poor street car service and exclusively for his own convenience, he was accustomed to drive his own automobile directly from his home to the depot and likewise in going from the depot to the coach yards instead of taking the company bus. Johnson's work requires him to report for duty

at about 7:45 a. m. His work consists of inspecting the inside of trains. After the work is completed at the depot some of the crew go on the company's trains to Minneapolis. The only times when Johnson used his own car was on Sundays and for the reasons and purposes already stated.

On Sunday, July 24, 1932, Johnson drove his automobile from his home to the depot. Having finished his work there, he entered his car and drove in the usual manner by him employed on such occasions, intending to go to the coach yards to finish his day's work there. It was during the course of this journey that the automobile accident took place.

The men were paid for the time that they were employed, and the trip from one place to the other was included in the time schedule. Mr. Tetu, coach yard superintendent, also drove his own car to the depot on the day in question and from the depot to the coach yards. He testified that he did not know that Johnson at any time used his automobile in going from the depot to the coach yards, even asserting he did not know that Johnson owned an automobile. Johnson testified:

"I used it [the car] going to work and from work for my own convenience. It was not that I needed it in the company's service."

The situation here presented and aptly stated by the trial judge (when he granted the motion to dismiss) is as follows:

"I do not think that Mr. Johnson could, for his own convenience and his own private purpose, use that automobile in the manner disclosed by the evidence and impose any liability upon the railroad company for an accident happening while he was so using it. The company had provided transportation and, it seems to me there would be no implied authority for the servant to adopt a different method of transportation, simply for his own convenience, and thereby impose liability upon his master."

So the question presented is whether or not liability as a matter of law can attach to the employer under such circumstances. Clearly the employer, having furnished and provided the means of transportation intended for the use of the employes and actually used by

them in making changes in the location of their work, did everything that it could be required to do in that regard. If Johnson had taken advantage of the bus service furnished by the company and had secured some other person to drive his car from the depot to the coach yards, there could be no liability attaching to the company in the event of the negligent driving of the car on the part of the person so driving it.

If he had taken a street car or had employed a taxi driver to make the trip, no one would contend that there was liability on the part of the employer. The fact must not be lost sight of that this particular trip, and all other trips made by Johnson under these circumstances, were made by him for the single purpose of having the car handy and in readiness for his own use so that he could, when the day's work was done, take the car from the place of his last employment and go directly home.

Is there any causal connection between this act of driving the car under the circumstances here related and the resulting accident and injury to plaintiff's child chargeable to the railway company? Plaintiff contends that there is and asserts that because the company knew or should have known of this arrangement the company has consented to this method of conveyance and has accepted Johnson's automobile as its own vehicle of transportation, or at least that it is liable to the same extent as if it were the owner. In behalf of defendant it is claimed with equal assurance that Johnson was his own master in respect of making these trips and that the company owed neither him nor any third party any duty. Obviously, when Johnson left the depot to bring his car to the coach yards, he was no longer rendering any service to the railway company nor operating his car for its use or advantage nor in any manner furthering his employer's interests. He had his own instrumentality and chose his own route, free from any supervision or control of his employer. He was a free agent and master of the entire situation as to this particular act.

The transportation here is not of the individual employe but a transportation by him of his own vehicle for his personal use and for his personal convenience. In no sense of the word can it be

said that the employer gains any benefit from this arrangement or assumes control over the driver of the vehicle. The owner and operator of the vehicle is his own master in every respect as much so as he would be if he were to hire his own transportation, whether by street car, bus, taxi, or any other method. The moment Johnson left the depot and entered his own car, for the purpose by him intended, he was the sole master of his own movements. Nothing connected with the trip or with the operation of the car had anything whatsoever to do with the work in which he was employed. The mere fact that the company may have known or should have known that he made these trips under the circumstances here related cannot change the final result. He only exercised the right of every other resident, that of driving his car upon the public thoroughfares for his own convenience.

If plaintiff's position is tenable, it would mean that if 5 or 10 or all of these 15 men, each seeking to serve his own convenience, had furnished and provided their own cars as did Johnson, the likelihood of damage because of collisions would be multiplied by the number of men so employing their own methods and means of transportation. It must always be remembered that it was not the individual who was being transported but only the vehicle itself which the servant desired to take from one place to the other for his own convenience and for his own use. The main purpose was, as herein repeatedly stated, to facilitate and accommodate the movements of the servant's car and as such was entirely separate and distinct from the service owed by him to the master.

If this accident had happened after Johnson's work was done and he was on his way from the coach yards to his home, plaintiff surely would not contend that a recovery against the railway company is permissible. So the practical effect of the rule here stated by the employer seems consistent with reason and with the practical operation of the means here employed for the purpose intended.

If plaintiff's position is to be the law it will mean that every employer of labor must necessarily forbid his employes the use of their own cars under such circumstances as here disclosed. Instead of benefiting the servant thereby, it will be a positive detriment to

him. His freedom of action will be denied him, and his right to the use of his own vehicle for his own purpose, comfort, and convenience greatly limited. It will mean added and burdensome restrictions upon a class that should be privileged, as are all other classes, to own and operate their own cars for their own convenience, comfort, and welfare.

Counsel for both sides concede that after careful research no case directly in point has been found. Both claim, however, that there are numerous cases upholding their respective positions. A brief discussion may be appropriate in respect of plaintiff's claims. It is asserted that Johnson was the servant of the railway company; that he was being paid wages during the time the trip from the depot to the coach yards was made; that he was on an errand of his employer in that he, in making this trip in his own car, simply adopted a different means of transportation than that furnished and provided by his employer; that he had no personal reason for getting to the coach yards; that "the test is whether Johnson's trip was in furtherance of the business of the Great Northern Railway Company and not in the manner or method by which he made the trip."

If the facts shown in the record justify the premise upon which the test assumed is founded, it may be conceded that plaintiff's position is tenable. But, as we have seen, the trouble with plaintiff is that the premise does not exist. That Johnson was the servant of the railway company and that he was being paid wages at the time the trip was made are conceded facts. But in making this trip he was not on an errand of his employer but made the same for his own purpose and convenience only. It is also true that he had no personal reason for getting to the coach yards except that of getting his car to that particular point to suit and serve his own personal convenience. And, applying plaintiff's own test, it conclusively appears that Johnson was not in any sense in the furtherance of his employer's business.

In the case of In re Claim of Dependents of Marks v. Gray, 251 N. Y. 90, 167 N. E. 181, 183, cited by counsel, it is said:

"If the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure

of the private purpose though the business errand was undone; the travel is then personal, and personal the risk."

Many other cases, similar in import and decision, are cited by counsel, but in all of them it appears that the *primary* cause or purpose for making such trip was a business purpose for the employer and that the personal purpose of the employe was merely incidental thereto. The case of Austin v. Leonard, Crossett & Riley, Inc. 177 Minn. 503, 225 N. W. 428, 429, is not of aid to plaintiff. That was a compensation case. This court upheld the findings of the industrial commission [177 Minn. 505] "that it was a part of decedent's duties to travel back and forth between the farm and the warehouse at Moorhead in order to perform services at both places; that he was engaged in his employment while so doing; and that the accident arose out of and in the course of his employment." In Kuehmichel v. Western U. T. Co. 125 Minn. 74, 77, 145 N. W. 788, 789, L. R. A. 1918D, 355, the court said:

"The test in determining whether the doctrine of *respondeat superior* applies is, generally, whether the person sought to be charged had at the time the right to control the action of the person doing the wrong, both as to the acts done and the manner of doing them. * * *

"He was not on any business of his own. He was not his own master. He was serving his employer, and without doubt his employer had the right to control and direct his actions at the moment of his negligent act, both as to any act done and as to the manner of doing it as well."

Clearly this case is distinguishable from the one here under consideration. We conclude that further discussion of the cases cited and relied upon by plaintiff is unnecessary. The foundation for liability is lacking.

In reaching the conclusion here arrived at we have not gone as far as did the court in Khoury v. Edison E. I. Co. 265 Mass. 236, 164 N. E. 77, 60 A. L. R. 1159, where the same result obtained.

Order reversed.