STRACK (Nettie), Plaintiff and Respondent, v. STRACK (Clarence J.), Defendant and Respondent: TRACY and others, Defendants and Appellants.

*January 12—February 7, 1961.*

For the appellants there were briefs and oral argument by *Crosby H. Summers* of Janesville.

For the respondent Nettie Strack there was a brief by *Dempsey & Robinson* of Whitewater, and oral argument by *Clark Dempsey*.

For the respondent Clarence J. Strack there was a brief by *Oestreich, Nowlan & Mouat,* and oral argument by *Louis D. Gage, Jr.,* all of Janesville.

BROWN, J. The affidavits filed in support of and in opposition to the motion present a question of law without any substantial issues of material fact to be tried. Therefore this is a case proper to be disposed of by summary judgment. *Laffey v. Milwaukee* (1959), 8 Wis. (2d) 467, 472, 99 N. W. (2d) 743.

The affidavits show without dispute that Flodeen was hired by the appellants to work on appellants' farms near Janesville. His workday begins when he reaches the "home farm," usually about 7 a. m. and ends about 2 p. m. His pay starts when he gets to the home farm. When he arrives there a foreman tells him and other employees where they shall work. The employer then transports the workers to the vari-

ous fields where they are to work. At the end of the workday, the truck brings them back to the home farm and they go their several ways by means of their own to their homes or to other destinations.

On the day of the accident Flodeen came to the home farm in his own automobile. A foreman told him which field he was to work in where he was to drive a tractor. The truck with a driver was on hand to take him and the other workers to the fields. The weather threatened rain and Flodeen told the foreman that he would drive his own car to the designated field so that if rain began and field work was discontinued he would not have to wait around for the truck to come for him but could start back to Janesville without delay. He had an afternoon job in Janesville for another employer. The foreman made no objection to this, and it was not unusual for employees to come to the fields in their own automobiles instead of in the farm truck. On this occasion, when the truck was ready to start with the other members of the working party, the foreman again asked Flodeen if he was going with them and Flodeen said he was not. Thereupon the truck drove off and soon afterwards Flodeen started in his own car to the field. On the way there Flodeen collided with the automobile of the codefendant, Clarence Strack. Nettie Strack, the plaintiff, wife of Clarence, suffered personal injuries in the collision. She has brought this action against her husband and the trustees of the estate which employs Flodeen.

Uncontradicted affidavits state positively that at the time and place of the accident Flodeen's use of his car was at his own instance and for his own purposes without intent to use it to serve his employer. Affidavits in opposition allege that use by employees of their own cars did produce some benefit to the employer. The affidavits say that such benefits would be that employees could get to their jobs quicker and start

work earlier; in case of rain the employees could come back to the home farm more quickly to be assigned to jobs under cover; the employees would not stand around in the rain, perhaps get sick and so deprive the employer of their services.

The trial court determined:

". . . a jury issue exists as to whether the employee, Flodeen, had stepped aside the business of his principal to accomplish an independent purpose of his own, or whether he was actuated by an intent to carry out his employment and to serve his master."

We find there is no jury issue because the affidavits show that the material facts are undisputed, to wit:

Flodeen had reported for work and from that time forward he was being paid for his time. He was assigned to a job and transportation to the jobsite was offered him by his employer. He was not required to accept the transportation provided and Flodeen declined to avail himself of it. He informed his superior that he would drive his own automobile to the jobsite for his own benefit and convenience to accomplish a purpose solely his own, that is, to get home more quickly when his work at the field was over. The employer knew that employees sometimes came to the fields in their own cars and he did not object to that practice. Specifically, he knew that Flodeen would use his own automobile to reach the place where his work was to be performed and acquiesced in the use. During Flodeen's journey to the field he had a collision with another car and a passenger in that car was injured.

Is Flodeen's employer liable in such circumstances, under the principle of *respondeat superior,* for the tort committed by Flodeen?

The controlling principle is that stated in Restatement, 1 Agency (2d), p. 504, sec. 228 (2):

"Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or *too little actuated by a purpose to serve the master.*" (Italics ours.)

In the instant case Flodeen's affidavit stated:

". . . that but for the desire on the part of your affiant to eliminate the delay in waiting for the truck to pick him up at the end of his shift, he could have ridden upon said truck to the field; that said truck was available in which to ride; that affiant's use of his own car at said time and place was at his own request and solely for his own convenience and benefit; . . ."

Flodeen's purpose and intention in using his own car is not controverted. Though it may be conceded that the affidavits in opposition to the motion allege benefits to the employer by permitting employees to use their own automobiles, we consider such benefits to be immaterial to the question before us when, as here, the alleged benefits were merely incidental to the employee's declared purpose to benefit himself alone by this use and to promote solely his own convenience. Not only is there "little" actuation by a purpose to serve the master—there is no such purpose at all.

Restatement, 1 Agency (2d), is instructive also in comment *b,* p. 530, sec. 239, the appropriate part of which is:

"The master may authorize the use of a particular instrumentality without assuming control over its use as a master. The fact that he does not own it or has not rented it upon such terms that he can direct the manner in which it may be used indicates that the servant is to have a free hand in its use. If so, its control by the servant, although upon his master's business, is not within the scope of the employment."

Illustration 4, page 531, of the above comment also illustrates the principle to be controlling here. This is:

"The master agrees with A, his servant, to pay for A's transportation upon public vehicles such as railway trains and streetcars. As an alternative, A is permitted to use his own automobile for transportation, charging to the master the regular train fare. A is paid by the week, with indefinite hours of labor. In going to a place at which he is to perform work for the master, A drives his own car, carrying thereon necessary tools and materials belonging to the master. In the absence of evidence that A owes P any duty of obedience in the details of operating the automobile, such driving is not within the scope of employment."

Flodeen was permitted, but not directed, to drive his own car to the field; there is an entire absence of evidence that in the details of operating the automobile Flodeen had any duty of obedience to his employer and, as illustration 4 advises, such driving is then not within the scope of his employment.

It must be admitted that the reported decisions in substantially similar circumstances are not unanimous in determining that the employee has or has not gone outside the scope of his employment when driving his own automobile. The present parties find citations in good measure to support their respective contentions. Many of such contrary results cannot be reconciled with each other. In all substantial features of the issue before us, appellants' citation of *Erickson v. Great Northern R. Co.* (1934), 191 Minn. 285, 253 N. W. 770, seems to us to be in point here and to be persuasive. One Johnson was employed as a car inspector for the railroad company. He reported daily to the depot and thence he was taken by a company bus to the car yards in company with other employees. He was paid for the time when he was on the bus. On Sundays, because of poor streetcar connections, for many years Johnson customarily drove his own car from his home to the depot and from the depot to the car yards instead of taking the company bus. On a certain Sunday he had finished his work at the depot and

was driving his car to the car yards to do his work there when his car struck and injured the plaintiff. The plaintiff sued the railroad company. The Minnesota court held that as a matter of law the plaintiff had no cause of action against the railroad. .The court said that it was immaterial whether or not the railroad knew or should·have known that he used his car in that way and on such occasions. Johnson had testified (p. 287) : "I used it [the car] going to work and from work for my own convenience. It was not that I needed it in the company's service." In holding that the action must be dismissed as to the railroad company, the court said (p. 288) :

"Obviously, when Johnson left the depot to bring his car to the coach yards, he was no longer rendering any service to the railway company nor operating his car for its use or advantage nor in any manner furthering his employer's interests. He had his own instrumentality and chose his own route free from any supervision or control of his employer. He was a free agent and master of the entire situation as to this particular act.

"The transportation here is not of the individual employee, but a transportation by him of his own vehicle for his personal use and for his personal convenience. In no sense of the word can it be said that the employer gains any benefit from this arrangement or assumes control over the driver of the vehicle. The owner and operator of the vehicle is his own master in every respect as much so as he would be if he were to hire his own transportation, whether by streetcar, bus, taxi, or any other method. The moment Johnson left the depot and entered his own car, for the purpose by him intended, he was the sole master of his own movements. Nothing connected with the trip or with the operation of the car had anything whatsoever to do with the work in which he was employed. The mere fact that the company may have known or should have known that he made these trips under the circumstances here related cannot change the final result."

Respondent cites cases which would indicate that on the same facts in some other courts a different result would be reached. However, the *Erickson Case* has not been overruled and reason and the weight of authority, as we have found it (see citations found on pp. 376–378, sec. 239, Restatement, 3 Agency (2d), Appendix), supports the *Erickson* decision and the decision which we have reached. That is, that under the circumstances heretofore set forth, Flodeen's operation of his automobile did not come within the scope of his employment and the doctrine of *respondeat superior* does not apply to impose liability on his employer for Flodeen's tort.

*By the Court.*—Order reversed. Cause remanded with instructions to order summary judgment in accordance with appellants' motion.