56 Wis.2d 44 (1972)
201 N.W.2d 521
WUORINEN, General Guardian, and others, Plaintiffs and Appellants,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and others, Defendants and Appellants:
STATE, Intervening Defendant and Respondent.
FELICE, Plaintiff and Appellant,
v.
SEMENOK and another, Defendants and Appellants:
STATE, Intervening Defendant and Respondent.
KROENING, by Guardian ad litem, and another, Plaintiffs and Appellants,
v.
HERITAGE MUTUAL INSURANCE COMPANY and others, Defendants and Appellants:
STATE, Intervening Defendant and Respondent.
Nos. 159-161.
Supreme Court of Wisconsin.
Argued October 2, 1972.
Decided October 31, 1972.
*50 For the plaintiffs-appellants in Case No. 159 there were briefs by Warshafsky, Rotter & Tarnoff, attorneys, and Merton N. Rotter of counsel, all of Milwaukee, and oral argument by Merton N. Rotter.
For the plaintiff-appellant in Case No. 160 there were briefs by Habush, Gillick, Habush, Davis & Murphy, *51 attorneys, and Howard A. Davis of counsel, and oral argument by Merton N. Rotter, all of Milwaukee.
For the plaintiffs-appellants in Case No. 161 there were briefs by Anthony J. Dentici and oral argument by Merton N. Rotter, both of Milwaukee.
For the defendants-appellants in Cases No. 159 and 160 there were briefs by Schoone, McManus & Hanson, S.C., attorneys, and Adrian P. Schoone of counsel, all of Racine, and oral argument by Adrian P. Schoone.
For the defendant-appellant Heritage Mutual Insurance Company in Case No. 161 the cause was submitted on the briefs of Brown, Black, Riegelman & Kreul, attorneys, and Richard J. Kreul of counsel, all of Racine.
For the respondent in Cases No. 159, 160 and 161 the cause was argued by Theodore L. Priebe, assistant attorney general, with whom on the brief was Robert W. Warren, attorney general.
BEILFUSS, J.
The determinative issue is whether there was any credible evidence which would support a jury verdict that the defendant Semenok was acting in goodfaith performance of his military duty and in pursuance thereof as a member of the Wisconsin National Guard at the time of the accident.
In this case the evidence must be viewed in a light most favorable to the plaintiffs and principal defendants because the verdict was directed against them.[2] And in Weber v. Walters (1954), 268 Wis. 251, 255, 67 N. W. 2d 395, we said:
"`The rule of law is well established that if the evidence is conflicting, or if the inferences to be drawn from the credible evidence are doubtful and uncertain, and there is any credible evidence which under any reasonable view will support or admit of an inference either for or against *52 the claim or contention of any party, then the rule that the proper inference to be drawn therefrom is for the jury should be firmly adhered to and the court should not assume to answer such question either upon a motion for nonsuit or direction of verdict, or by substituting another answer after the verdict is returned. Wisconsin Telephone Co. v. Russell (1943), 242 Wis. 247, 252, 7 N. W. (2d) 825, and cases there cited.' Czerniakowski v. National Ice & Coal Co. 252 Wis. 112, 115, 31 N. W. (2d) 156."
We believe, in the case at hand, that the evidence is undisputed and that as to the material issue the inferences to be drawn are not uncertain and that an issue of law is presented.
The crucial question in dispute is really what law applies in this case. The appellants' position is that the "broader tests" and the "dual purpose test" adopted in workmen's compensation cases are the controlling law. The appellants particularly rely on Barragar v. Industrial Comm. (1931), 205 Wis. 550, 238 N. W. 368, and Matter of Marks v. Gray (1929), 251 N. Y. 90, 167 N. E. 181, in which this court adopted those tests to be applied in such cases. The broader test is that for such injuries to be compensable the question is whether at that material time the employee was performing services growing out of and incidental to his employment. Butler v. Industrial Comm. (1953), 265 Wis. 380, 61 N. W. 2d 490. The dual purpose doctrine grew out of the following language adopted by this court at pages 384, 385:
"`Workmen's compensation is not confined by commonlaw conceptions of scope of employment. Cardillo v. Liberty Mutual Ins. Co. 330 U. S. 469, 481; Matter of Waters v. Taylor Co. 218 N. Y. 248, 251, 112 N. E. 727, 728. The test of recovery is not a causal relation between the nature of employment of the injured person and the accident. Thom v. Sinclair [1917] A. C. 127, 142. Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the "obligations or conditions" *53 of employment create the "zone of special danger" out of which the injury arose.'"
In Butler, the court went on to state that the principles of the common-law doctrine of respondeat superior (the law of master and servant) do not apply to workmen's compensation cases. The reasons why the court adopted these doctrines is based on the same rationale of the Louisiana court, which was quoted in Butler. The court stated, at page 384:
"`These pronouncements reflect the modern judicial concept of compensation legislation, which is based on the premise that the phrase "arising out of the employment" does not have the same connotation as the common-law "scope of employment," the interpretation earlier attributed to it, but means, instead, the employment viewed from any aspectits nature, conditions, obligations, and incidents. They lend emphasis to the growing recognition of the fact that judicial interpretation of these acts creating liability irrespective of fault in the light of commonlaw liability predicated on fault hedges this humanitarian legislation about with the very restrictions it sought to circumvent and abolish, and nullifies the underlying insurance principle inherent in this industrial compensation.'"
This is not a workmen's compensation case so neither the broader test of employment nor the dual purpose doctrine are controlling. Rather, the principles of the common-law doctrine of respondeat superior apply. The case at bar involves third parties seeking money damages from the state because of Semenok's negligence and not Semenok seeking benefits under workmen's compensation law.
In Kamp v. Curtis (1970), 46 Wis. 2d 423, 430, 431, 175 N. W. 2d 267, we stated:
"The plaintiff takes the erroneous position that the mere fact Curtis' travel was necessitated by Ford, Bacon & Davis' assignment of him to the La Crosse area renders his travel an act within the scope of his employment. *54 Relying on Barragar v. Industrial Comm. (1931), 205 Wis. 550, 238 N. W. 368, wherein this court quoted from Matter of Marks v. Gray (1929), 251 N. Y. 90, 167 N. E. 181, the plaintiff contends that once the trip is established to be that of the employer, it is unnecessary to establish the employer's right to control the details of the trip.
"This court has recognized in Strack v. Strack (1961), 12 Wis. 2d 537, 541, 107 N. W. 2d 632, that:
"`"Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." (Italics ours.)'
"Even assuming the purpose of the trip was sufficiently that of the employer, the plaintiff is in error in that the right to control has long been the touchstone in determining whether one was acting within the scope of his employment. Barragar and Marks which was cited therein, unlike the instant case, involved a claim arising out of the Workmen's Compensation Act. This court, as early as Butler v. Industrial Comm. (1953), 265 Wis. 380, 383, 384, 61 N. W. 2d 490, recognized that the principles of the common-law doctrine of respondeat superior were different from those applicable to workmen's compensation cases.
"In the instant case, while Curtis was reimbursed for neither expenses incurred in traveling from his former home to La Crosse nor for expenses in moving his family and belongings, he was compensated for the cost of traveling from his former home to Omaha. Such reimbursement, however, did not grant nor did Ford, Bacon & Davis exercise any control over the method or route of Curtis' travel."
Therefore the "right of control" is material to determine whether Semenok was acting within the scope of his employment. We believe the answer is clear. One authorized to leave on pass to do what he wants on his own free time for a period of twenty-four hours is not acting within the scope of his military duty nor in pursuance thereof. The national guard was in no way controlling Semenok's free time, and the national guard *55 did not control Semenok's conduct at these material times, nor the method or route of travel in his private vehicle.
In Strack v. Strack (1961), 12 Wis. 2d 537, 107 N. W. 2d 632, it appears an employee drove his own car to the "home farm" to report for work, and from that time forward he was being paid for his time. He was then assigned to a jobsite located some miles away. He was permitted but not directed to drive his own car to the jobsite. While driving there in his own vehicle he collided with another car. This court held that he was not acting within the scope of his employment, citing Restatement, 1 Agency 2d, p. 530, sec. 239, comment b, as authority, stating at pp. 541, 542:
"`The master may authorize the use of a particular instrumentality without assuming control over its use as a master. The fact that he does not own it or has not rented it upon such terms that he can direct the manner in which it may be used indicates that the servant is to have a free hand in its use. If so, its control by the servant, although upon his master's business, is not within the scope of the employment.'
"Illustration 4, page 531, of the above comment also illustrates the principle to be controlling here. This is:
"`The master agrees with A, his servant, to pay for A's transportation upon public vehicles such as railway trains and streetcars. As an alternative, A is permitted to use his own automobile for transportation, charging to the master the regular train fare. A is paid by the week, with indefinite hours of labor. In going to a place at which he is to perform work for the master, A drives his own car, carrying thereon necessary tools and materials belonging to the master. In the absence of evidence that A owes P any duty of obedience in the details of operating the automobile, such driving is not within the scope of employment.'"
Therefore, like in the Strack and Kamp Cases, the employee Semenok was not directed nor ordered to use his vehicle in traveling to his next place of duty or employment. *56 Semenok was on pass and free to use his own vehicle as he saw fit. He chose his own route of travel free from any supervision or control or even knowledge by the national guard. There is no evidence that Semenok was performing any act of benefit for his unit. Semenok's acts at the time in question do not conform to any of his military duties, responsibilities or orders. Instead, he was at liberty under pass without direction or control as to how he would spend that free time. Under these circumstances we believe the trial court was compelled to change the jury's verdict so as to find Semenok outside the scope of his military dutythat is, he was not acting within the scope of his employment at the time of the accident and was not in good-faith performance of his state duties.
Appellants also contend that because Semenok was on "active duty" from July 12, 1969, through July 26, 1969, this places him continually within the scope of his employment until his active duty terminates. If this is the case, then by analogy, police officers and those people who make the armed forces a career would be acting twenty-four hours a day within the scope of their employment. And this would continue for years or until they retire from active service. Surely "active service" should not be the determining factor. Military duty is a unique status and the government's ability to control Semenok as an employer is only by virtue of its military capacity. By the very nature of such a relationship the necessary element of control should encompass only those particular functions for which he was required to perform not the totality of one's conduct while in military status. The national guard's only concern was that he report for duty at Rhinelander at noon on July 26th. The mode and manner of his travel was of his own choosing and for his own benefit. He came down in a convoy and could have gone back by convoy. His response as to why he brought his car down to camp from his midweekend *57 trip home clearly indicates only one inference. That inference is that his intentions were purely of a personal nature. The car was for his own use and benefit subject to the control of no one but himself. He had undertaken to get where he was going on his own responsibility. The operation of the car was undertaken at his responsibility and not as an activity of the government. Any inferences drawn to the contrary are clearly unreasonable under the facts of his case. He was in no way acting within the scope of his military duty as a cook or anything else. The trial court properly granted the motion for a directed verdict.
Because we are of the opinion the trial court correctly directed the verdict against the claims of the plaintiffs and the principal defendants and entered judgment dismissing the claims against the intervening defendant, the issues of subrogation and indemnification raised by motions for summary judgment need not be considered.
By the Court.Judgment and order affirmed.
NOTES
[2] Tanberg v. Rydberg (1965), 26 Wis. 2d 91, 94, 131 N. W. 2d 858.