Bruce G. WELTER, Sally J. Welter and Jon E. Welter, Plaintiffs-Appellants,

v.

Florence L. SINGER, General Casualty Company of Wisconsin, and Blue Cross & Blue Shield United of Wisconsin, Defendants,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Heritage Mutual Insurance Company and Garland D. Singer, Defendants-Respondents.†

Court of Appeals

*No. 84–1549. Submitted on briefs July 8, 1985.—*
*Decided September 19, 1985.*
(Also reported in 376 N.W.2d 84.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

244

For the plaintiffs-appellants the cause was submitted on the briefs of *John C. Wickhem* and *Wickhem, Buell, Meier, Wickhem & Southworth* of Janesville.

For the defendant-respondent American Family Mutual Insurance Company the cause was submitted on the brief of *Thomas F. Berg* of Janesville.

For the defendants-respondents Heritage Mutual Insurance Company and Garland D. Singer the cause was submitted on the brief of *Ward I. Richter* and *Bell, Metzner & Gierhart, S.C.* of Madison.

Before Gartzke, P.J., Dykman, J. and Eich, J.

DYKMAN, J.   Bruce Welter, and his parents, Sally Welter and Jon Welter, appeal from a summary judgment dismissing their claims against American Family Mutual Insurance Company and Heritage Mutual Insurance Company for coverage beyond single occurrence limits.   The issue is whether the trial court erred in holding that the facts established only one "accident" or "occurrence" under the terms of each policy.   Because we conclude there was one occurrence, we affirm.

## FACTS

Bruce Welter was riding his bicycle into a Janesville intersection when he was struck and seriously injured by a car driven by defendant Garland Singer. Welter's cycling companion, John Ihle, Jr., was also hit by the Singer car, but was not seriously injured. Singer stopped after the collision but then drove clear of the intersection, dragging Welter beneath the car, before stopping again. In an apparent attempt to find reverse gear, Singer again moved the car forward about a foot. He then got out of the car and Ihle got in. Ihle backed up about ten feet in an attempt to free Welter. Welter suffered permanent paraplegia from the trauma.

Appellants brought suit, pleading four separate causes of action, corresponding to the three times Singer put the car in motion and the one time Ihle did so. American Family had issued an automobile policy providing "underinsurance" coverage to the Welter family.[1] Singer was insured by Heritage Mutual Insurance Company. Finding Singer "underinsured," American Family offered the Welters the single accident policy limit amount of their "underinsurance" coverage. The Welters accepted, reserving the right to make additional "under-

[1] American Family's attorney stated that their policy provides that:

We will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of a uninsured motor vehicle. The bodily injury must be caused by accident and arise out of the use of the uninsured motor vehicle.

LIMITS OF LIABILITY

The limits of liability shown in the declarations apply, subject to the following:

1. The limit for "each person" is the maximum for bodily injury sustained by any person in any one accident.

We will pay no more than these maximums no matter how many vehicles are described in the declarations, or insured persons, claims, claimants, policies or vehicles are involved.

insured" claims on the basis of their four-accident theory. American Family was successful in its motion for summary judgment, and was therefore dismissed from the suit.

Singer and Heritage Mutual also moved for summary judgment on the theory that there had been but one "occurrence." The trial court granted partial summary judgment, ruling that there had been only one "occurrence" and, thus, liability for only one policy limit payment.[2] Heritage was not dismissed because it continued to defend against that claim.[3]

[2] The relevant portions of Heritage Mutual's policy provide:

LIMITS OF LIABILITY

The limits of liability shown in the Declarations apply subject to the following:

1. The bodily injury liability limit for "each person" is the maximum we will pay as damages for bodily injury, including damages for care and loss of services, to one person in one occurrence.

2. Subject to the bodily injury liability limit for "each person," the bodily injury liability limit for "each occurrence" is the maximum we will pay as damages for bodily injury, including damages for care and loss of services, to two or more persons in one occurrence.

3. The property damage liability limit for "each occurrence" is the maximum we will pay for all damages to property, including loss of its use, in one occurrence.

We will pay no more than these maximums regardless of the number of vehicles described in the Declarations, insured persons, claims, claimants, policies or vehicles involved in the occurrence. Any amount payable under this coverage to or for an injured person will be reduced by any payment made to that person under the Uninsured Motorists coverage of this policy.

TWO OR MORE CAR POLICIES

If this policy and any other car insurance policy issued to you by us apply to the same occurrence, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

[3] John Ihle, Jr. and his insurer were also named in the Welters' complaint. Those defendants are not parties to this appeal.

## STANDARD OF REVIEW

In reviewing the grant of summary judgment, we must apply the standards set forth in sec. 802.08, Stats., in the same manner as the trial court. *In re Cherokee Park Plat*, 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582–83 (Ct. App. 1983). We are required by this standard to reverse if, on the record, it appears that there is a genuine issue as to material facts, *Garrett v. City of New Berlin*, 122 Wis. 2d 223, 228, 362 N.W.2d 137, 140 (1985), or if the trial court has incorrectly decided a legal issue. *Arnold v. Shawano County Agr. Society*, 111 Wis. 2d 203, 209, 330 N.W.2d 773, 776 (1983).

Construction of a contract involves a question of fact only where its words are ambiguous and require construction by reference to extrinsic facts. *Reserve Life Ins. Co. v. La Follette*, 108 Wis. 2d 637, 645, 323 N.W.2d 173, 177 (Ct. App. 1982); *Bradley Bank v. Hartford Acc. & Indem.*, 737 F2d 657, 660 (7th Cir. 1984). Appellants argue that because the terms "accident" and "occurrence," are undefined by the liability policies in question, they are ambiguous and require construction. They cite cases from a number of jurisdictions holding that such ambiguities exist and must be construed against the insurer.

This is not the law in Wisconsin. In *Olsen v. Moore,* 56 Wis. 2d 340, 346–47, 202 N.W.2d 236, 239 (1972), the court cited with approval *Truck Insurance Exchange v. Rohde*, 303 P.2d 659, 664 (Wash. 1956), which held in part: "The words 'accident' and 'occurrence' are words of common usage and, in and of themselves are not ambiguous." The *Olsen* court also said that the terms "occurrence" and "accident" are synonymous in

the context of liability insurance. *Olsen* at 351, 202 N.W.2d at 241.

Because there is no ambiguity in these terms, their interpretation within these insurance contracts is solely a question of law. *Reserve Life* at 645, 323 N.W.2d at 177. No other material fact appears in dispute. Because summary judgment is appropriate where a question of law decides the case, *Garchek v. Norton, Co.*, 67 Wis. 2d 125, 130, 226 N.W.2d 432, 435 (1975), this case is properly decided on such a motion.

## *"ACCIDENT" OR "OCCURRENCE"*

We owe no deference to the trial court's interpretation of the words "accident" or "occurrence." *Demerath v. Nestle Co., Inc.*, 121 Wis. 2d 194, 197, 358 N.W.2d 541, 543 (Ct. App. 1984). However, because those words are unambiguous, we must not depart from their plain and ordinary meaning. *Matter of Liquidation of All-Star Ins.*, 112 Wis. 2d 329, 333, 332 N.W.2d 828, 830 (Ct. App. 1983). The language of an insurance contract must be given the common and ordinary meaning it would have in the mind of a lay person. *Kremers-Urban Co. v. American Employers Ins.*, 119 Wis. 2d 722, 735, 351 N.W.2d 156, 163 (1984).[4]

We now consider whether, given the ordinary meanings of these terms, a common sense view of the facts

---

[4] We are mindful of the fact that, while we must adopt the common and ordinary lay person's perceptions of meaning in interpreting an insurance contract, there is no similar mandate regarding our view of the facts. Nonetheless, construction of the terms of a contract cannot occur in a factual vacuum. Therefore, we conclude that in order to give common and ordinary meaning to the terms of an insurance contract, we must adopt a lay person's perceptions of the operative facts which occasion its construction.

of record demonstrates one or more than one "accident" or "occurrence."

Courts facing this issue have taken one of two positions: that the terms "accident" or "occurrence" refer to the cause, or that they refer to the result of the event to which liability is attributed.[5] The Wisconsin Supreme Court, in *Olsen v. Moore, supra,* joined the majority of jurisdictions by adopting the "cause" analysis. That is, where a single, uninterrupted cause results in all of the injuries and damage, there is but one "accident" or "occurrence." If the cause is interrupted or replaced by another cause, the chain of causation is broken and there has been more than one accident or occurrence. *Olsen* at 349, 202 N.W.2d at 240.

*Olsen,* like most cases applying cause analysis, involved one incident in which several persons or articles of property were affected. However, the analysis appears equally applicable to cases where one person or item of property undergoes several harms from a series of negligent acts. *Bartholomew v. Ins. Co. of North America,* 502 F. Supp. 246, 251–52 (R.I. 1980), *aff'd,* 655 F.2d 27 (1st Cir. 1981).

The third circuit court of appeals, in *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.,* 676 F.2d 56 (3d Cir. 1982), looked for a common source of a series of injuries in identifying proximate cause.

The general rule is that an occurrence is determined by the cause *or causes* of the resulting injury. . . .
The fact that there were multiple injuries and that they were of different magnitudes and that injuries extended over a period of time does not alter our conclusion that there was a single occurrence. As long as the injuries stem from one proximate cause there is a

---

[5] Many of the cases defining this doctrinal split are collected at 55 A.L.R.2d 1300.

single occurrence. [Citations omitted.] [Emphasis added.]

*Appalachian Ins. Co.* at 61.

If cause and result are so simultaneous or so closely linked in time and space as to be considered by the average person as one event, courts adopting the "cause" analysis uniformly find a single occurrence or accident. While there was a cognizable time and space interval between each of the operations of the Singer car, Welter's body was in virtually continuous contact with the car after the initial impact. While Welter's multiple injuries could have been inflicted at a number of times and places within that brief interval, it was the initial collision which created the occasion and circumstances for any subsequent injuries. There is no assertion that the last three operations of Singer's car would have inflicted any injury or would have occurred at all in the absence of the initial impact.

A common sense view of the facts discloses that any of appellant's injuries not inflicted by the first impact were the result of causes acting concurrently with and directly attributable to it. Hence, it was the predominant, active and continuing cause.

### CONTROL

Appellants argue that each of Singer's operations of his car are distinguishable as separate "accidents" or "occurrences" because he regained control of the car between each operation. Appellants cite *Liberty Mutual Insurance Co. v. Rawls,* 404 F.2d 880 (5th Cir. 1968), in support of this argument. In that case, a driver rear-ended the Rawls vehicle causing severe injuries to its passengers. After this impact, the driver

continued for two to five seconds and a distance of between 30 and 300 feet, striking another car and inflicting serious injuries on its passengers. The court of appeals for the fifth circuit held that, because the negligent driver had control of his car after the initial collision, there were two accidents, and two policy limits applied.[6]

*Rawls* is distinguishable from the case at bar from the standpoint of control over the causative factor. In *Rawls,* the negligent driver left the first car and its injured passengers behind enroute to the second collision. Welter, on the other hand, was pinned beneath the Singer car during all of Singer's and Ihle's maneuvers. While Singer may have regained full control of his car each time he stopped, Welter was still trapped beneath it. Hence, Singer never regained a full measure of control over either the car's injury-inflicting potential or the situation in general. We find the control theory and *Rawls* unpersuasive here.

Appellants argue for a consistent general rule which transcends specific fact situations and eliminates the need to litigate this issue on a case-by-case basis. We cannot provide such a rule. The *Olsen* court looked to the operative facts of that case, and not the consequences. We must do likewise.

The entire incident lasted approximately one minute. There was one victim and, but for the intervention of Ihle, one tortfeasor throughout. The proximity in both time and space of these events, and their direct interdependence, convince us that the average lay person would view the circumstances as a singular "accident"

---

[6] The Wisconsin Supreme Court in *Olsen* found *Rawls* distinguishable because, in *Olsen,* the negligent motorist hit two cars virtually simultaneously, and never regained control after the first impact.

or "occurrence."[7]  Similarly, we conclude that the average observer would identify one cause of that "accident" or "occurrence"; that being Singer's negligence.

We conclude, therefore, that, under both the ordinary meanings of the words and the *Olsen* "cause" theory, there was but one "accident" or "occurrence" in this case.  Consequently, the single per "accident" or "occurrence" policy limits define respondents' maximum liability under their insurance contracts.

*By the Court.*—Judgment affirmed.

---

[7] This analysis is based upon a common perception of the facts. We note that appellants also refer to the events giving rise to this case as "the accident."

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.