JAMES CAPE & SONS COMPANY,
by its Receiver Michael S. Polsky,
Plaintiff-Appellant,

v.

STREU CONSTRUCTION CO.,
p/k/a PCC Construction Co.,
Vinton Construction Co., John Streu,
Ernest J. Streu, James J. Maples,
Michael J. Maples and Daniel Beaudoin,
Defendants-Respondents,†

ZURICH AMERICAN INSURANCE COMPANY,
Valiant Insurance Company,
Northern Insurance Company of New York
and RLI Insurance Company,
Intervening Defendants-Respondents.

Court of Appeals

No. 2008AP1517. *Submitted on briefs June 25, 2009.*
*—Decided September 9, 2009.*

2009 WI App 144

(Also reported in 775 N.W.2d 277.)

† Petitions to review denied 1/13/10.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Matthew J. Flynn, Andrew P. Beilfuss* and *John R. Remington of Quarles & Brady LLP* of Milwaukee.

On behalf of the defendant-respondent Daniel Beaudoin, the cause was submitted on the brief of *Patrick J. Knight* and *Kathryn A. Keppel* of *Gimbel, Reilly, Guerin & Brown* of Milwaukee.

On behalf of remaining defendants-respondents, the cause was submitted on the joint brief of *Daniel T. Flaherty, Michael B. Apfeld* and *Sean O'D. Bosack* of *Godfrey & Kahn, S.C.*, of Milwaukee, and *Andrew W. Erlandson* of *Hurley, Burish & Stanton, S.C.*, of Madison.

Before Brown, C.J., Snyder and Kessler, JJ.

¶ 1. BROWN, C.J. The doctrine of respondeat superior provides that an employee's conduct is imputed to the employer when the employee is acting within the scope of his or her employment. This makes the employer vicariously liable based on the agency relationship even where there is no wrongful conduct by the employer. James Cape & Sons Company sued one of its employees, Daniel Beaudoin, and the two companies that colluded with Beaudoin in a bid-sharing scheme, Streu Construction Co. and Vinton Construction Co. Beaudoin, Streu and Vinton convinced the circuit court that the doctrine of respondeat superior applied such that the court was required to view Cape to be part of the bid-rigging scheme, even though the

scheme allegedly harmed Cape and drove it out of business. As to Beaudoin, the issue was settled long ago in *Zulkee v. Wing*, 20 Wis. 429, [\*408] (1866), in which our supreme court held that respondeat superior applies "only as between the master or principal and third persons"; the doctrine has no application in a suit between an employer and employee. *Id.* at 431, [\*409–10]. And, as to Streu and Vinton, we conclude that persons colluding with the employee are prohibited from imputing the employee's conduct to the employer just as the employee is so precluded. We reverse and remand for further proceedings not inconsistent with this opinion.

## *Background*

¶ 2. Beaudoin was an area manager for Cape, a road construction company. Beaudoin's job was to submit bids for State contracts and manage the workflow of the construction crews. Sometime around 1997, Beaudoin began sharing Cape's bid information with Streu, through John and Ernest J. Streu, (Streu) and Vinton, through James J. and Michael J. Maples (Vinton). Through this bid-sharing scheme, Beaudoin, Streu and Vinton would adjust their bids so that a certain company won each state contract.

¶ 3. In 2003, Cape found out about the scheme and reported Beaudoin to federal authorities. An FBI investigation ensued and the scheme ended in 2004. The investigation's result was that Beaudoin, Streu and Vinton were each charged and convicted in federal court for sharing bid information in violation of the Sherman Antitrust Act 15 U.S.C. § 1 (2004). The FBI also gave Cape an immunity letter since Cape was not involved in the scheme. Cape later filed for bankruptcy.

¶ 4. This is Cape's suit against Beaudoin, Streu and Vinton for damages from the scheme. Cape alleged

526

that the scheme led to its bankruptcy. Beaudoin,[1] Streu and Vinton moved for summary judgment asserting that respondeat superior applied because Beaudoin intended, at least in part, to help Cape and thus Beaudoin was acting within the scope of his employment. This would purportedly make Cape a party in equal fault, or in pari delicto, with each of them. In response, Cape contended that Beaudoin did not intend to benefit Cape and was concealing the scheme from Cape, so a so-called "adverse interest" exception applied. But the circuit court found it to be undisputed that Beaudoin did intend, at least in part, to benefit Cape by seeking to prevent Cape from becoming overextended. It granted judgment for Beaudoin, Streu and Vinton.

## Discussion

¶ 5. We start our discussion with a brief response to Cape's side claim, a discovery issue. Cape argues that the circuit court erred in failing to require Beaudoin, Streu and Vinton to respond to discovery requests asking about "rigged bids." The circuit court had ordered Cape to stop using the phrase "rigged" in its discovery requests. While not clear, we presume this was because the loaded nature of the term might expose the defendants to the possible argument that, if they responded to the requests, they would be at risk of having "admitted" to the fact that they had "rigged bids." A discovery order is discretionary, see *Hegarty v. Beauchaine*, 2006 WI App 248, ¶ 107, 297 Wis. 2d 70, 727 N.W.2d 857, and we understand the circuit court's desire to make sure the record is free from manufac-

---

[1] One of Cape's arguments on appeal is that the circuit court could not grant summary judgment for Beaudoin because Beaudoin allegedly did not move for summary judgment. We will not address this issue since we reverse the grant of summary judgment on other grounds.

527

tured issues. We will affirm it so long as the circuit court did not erroneously exercise its discretion in ordering or prohibiting discovery. *Id.* But we really do not have to go that far. Cape admits it later obtained the information it sought through depositions. So, this point is moot. We affirm the discovery order.

¶ 6. Also, before we get to the main issue that ultimately decides this case, we feel it necessary to set forth the law behind the defendants' theory. We do so because it helps explain why the law we rely upon trumps the theory advanced by the defendants. On appeal, as they did in the circuit court, the parties argue about the weight to be given to Beaudoin's assertion that he entered into the bid-sharing scheme with intent, in a twist of logic, to benefit Cape by unilaterally seeing to it that Cape was not spread too thin. Again, the theory of the defendants, a theory adopted by the circuit court, is that if Beaudoin did intend to benefit Cape, then Cape cannot sue Beaudoin or his cohorts because it is in pari delicto with them. This requires us to explain in pari delicto.

¶ 7. Our supreme court examined in pari delicto in *Evans v. Cameron*, 121 Wis. 2d 421, 426–27, 360 N.W.2d 25 (1985). The complete name is *in pari delicto potior est conditio defendentis. Id.* at 426. It means that when the parties are in equal fault, the defendant's position is stronger. *Id.* The public policy reason is the refusal to decide a cause of action founded on an immoral or illegal act. *Id.* at 427. *Evans* also explained that this public policy is not absolute. *Id.* For example, when parties have very different degrees of guilt due to oppression, imposition, hardship, undue influence, or great inequality of condition or age, the public interest may necessitate that the court decide the case. *Id.*

¶ 8. None of the parties disagree that these are the fundamentals of the in pari delicto doctrine. Rather, they argue about whether Cape is at "equal fault" such that the doctrine should be applied. Simply put, the defendants claim that Beaudoin was acting within the scope of his employment and looking out for Cape's best interests by engaging in bid sharing to keep Cape from overextending itself. Realizing that Cape did not personally engage in any negligence or wrongdoing, the defendants argue that Cape is nonetheless liable because it vicariously stood to benefit from Beaudoin's good intentions. Cape responds that Beaudoin did this all on his own and claims that Beaudoin's assertion of wanting to "help" Cape is simply a lie. And even if Beaudoin's assertion is taken as true, there is no showing of how Cape vicariously was supposed to benefit from this bid-sharing arrangement.

■■

¶ 9. But the defendants reply by citing the doctrine of vicarious liability. Vicarious liability is "[l]iability that a supervisory party (such as an employer) bears for actionable conduct of a subordinate or associate (such as an employee) based on the relationship between the two parties." BLACK'S LAW DICTIONARY 934 (8th ed. 2004) (defining vicarious liability); *see also id.* at 1338 (defining respondeat superior). Courts impose this type of liability only where the principal has control or the right to control the physical conduct of the agent such that a master/servant relationship exists. *See Kerl v. Dennis Rasmussen, Inc.*, 2004 WI 86, ¶ 4, 273 Wis. 2d 106, 682 N.W.2d 328. In other words, because Cape had the right to control Beaudoin, to supervise him, Cape must be held accountable for Beaudoin's actions—even Beaudoin's tortured justification that he was just trying to help his employer.

¶ 10. When the master/servant relationship is between an employer and employee, the general rule of respondeat superior is that an employee's actions are imputed to his or her principal when the employee is acting within the scope of his or her employment. *Lewis v. Physicians Ins. Co.*, 2001 WI 60, ¶ 12, 243 Wis. 2d 648, 627 N.W.2d 484. Like in pari delicto, the doctrine of respondeat superior is one of public policy. The policy is to place liability on the employer because, in the promotion of its work, it has control over the mode and manner of its employees' performance and therefore ought to be liable for injuries caused by its employees' conduct. *Widell v. Holy Trinity Catholic Church*, 19 Wis. 2d 648, 653, 121 N.W.2d 249 (1963). This liability provides injured parties an alternative, and in some cases a more lucrative, source from which to recover damages. *Gonzalez v. City of Franklin*, 137 Wis. 2d 109, 126, 403 N.W.2d 747 (1987).·

¶ 11. In most respondeat superior cases, the dispute is whether the employee was acting within the scope of his or her employment. When scope is the issue, the focus is on the employee's intent. *Olson v. Connerly*, 156 Wis. 2d 488, 498–99, 457 N.W.2d 479 (1990). And so long as the employee was not entirely motivated by his or her own purposes, but intended, at least in part, to serve his or her employer, the employee's conduct is imputed to the employer. *See id.* at 499–500. This is why the parties focus their arguments on Beaudoin's intent.

¶ 12. But the facts of this case do not fall into any previous situation where a court held respondeat superior applies. Here, we have an employer suing its former

530

■

■

employee and persons and companies that colluded with that former employee. All of the cases Beaudoin, Streu and Vinton cite involve an innocent third party suing an employee and/or that employee's employer. None are suits between an employer and employee. And none are suits between an employer and persons colluding with an employee. So we are unconvinced that the cases cited by the defendants on intent control this case or that respondeat superior even applies. This is especially so here since it is generally assumed that when an employee's negligence or misconduct results in physical injury to another person or damage to the employer, an employee is liable for that injury or damage. *See, e.g., Zimmerman v. Wisconsin Elec. Power Co.*, 38 Wis. 2d 626, 633–34, 157 N.W.2d 648 (1968); Annotation, *Servant's Liability to Master, etc.*, 110 A.L.R. 831 (2009); RESTATEMENT (SECOND) OF AGENCY, § 401 cmt. d (1958); RESTATEMENT OF RESTITUTION § 96 (1937).

¶ 13. Our research has uncovered a 19th century Wisconsin case that decided whether respondeat superior applies in a suit between an employer and an employee. It is *Zulkee*, the case we cited at the top of this opinion. We also found a foreign jurisdiction that decided a similar issue and reached the same conclusion.[2]

¶ 14. Our supreme court explained in *Zulkee* that

[a]s between the master and a stranger, the servant represents the master, and the master is responsible;

---

[2] In *Norwich v. Silverberg*, 511 A.2d 336, 337 (Conn. 1986), a city sued some of its employees. The employees counterclaimed, relying on the respondeat superior doctrine that was encoded in a municipal statute, to request reimbursement of any amount the court might order them to pay. *Id.* at 340. The Connecticut Supreme Court concluded that the statute did not preclude the city from suing its own employees, and an employee cannot invoke respondeat superior to preclude an employer from recovery against an employee whose actions injured the employer. *Id.*

but as between the master and the servant who has committed the wrong or violated his duty no less to the master than to the stranger, no such rule prevails. A servant is directly liable to his [or her] master for any damage occasioned by his [or her] negligence or misconduct, whether such damage be direct to the property of the master, or arise from the compensation which the master has been obliged to make to third persons for injuries sustained by them . . . . It would be strange if the servant, in answer to such an action, could say: "*Respondeat superior.* I was your servant at the time of the injury; my act was your act, my negligence your negligence; and therefore you cannot recover."

*Zulkee,* 20 Wis. at 431–32, [*410]. Thus the court held that in a suit between a master and his or her servant, the servant who, without the assent or direction of the master, commits wrongs cannot impute those wrongs to his or her master. *Id.* at 432, [*411].

¶ 15. We are bound by *Zulkee.* Moreover, its commonsense logic makes as much sense today as it did in 1866. Holding otherwise would mean that employees could disregard their employer's business model in favor of a model wholly to the employees' own liking. What a world it would be if employees were allowed, without recourse, to decide for themselves the means and methods an employer uses to earn the revenue projected in its plans. It is for the employer to decide the question of how it is going to make money to survive and grow. An employee cannot take unilateral ownership of that question. Allowing anarchy to control employer-employee relationships is not a policy the courts have endorsed. And we do not do so now.

¶ 16. And to rule otherwise would be to disregard most, if not all, of the liabilities an employee has to his or her employer and render useless such treatises like the chapter on principal versus agent in the Restate-

ment of Agency. RESTATEMENT (SECOND) OF AGENCY ch. 13 (1958). And it certainly would not further the policy behind respondeat superior of providing the injured party with an alternate source for recovery. Instead, it would remove a source for recovery. As our supreme court stated so aptly in *Zulkee*, "[t]o apply the maxim in such a case would be an utter perversion of it, and destructive of all liability on the part of servants." *Zulkee*, 20 Wis. at 431, [*410].

¶ 17. Vinton and Streu try to distinguish themselves from Beaudoin by calling our attention to the fact that they are third parties, not Cape's employees. As third parties they claim to be able to invoke respondeat superior as a defense. But, as we alluded to earlier, their core argument is that, even though they are hardly innocent parties, they should be able to "piggy back" their defense on the shoulders of an employee who purportedly wanted to "help" his employer by rigging up a different business model than the employer had in mind. We are having none of it. If it does not work for the employee, it cannot work for the employee's co-conspirators either.

¶ 18. The Restatement's section on vicarious liability illustrates the distinction between Vinton and Streu's position and the position of an "innocent" third party:

> Where an agent has committed a tort for which, because of the agency relation, his [or her] principal is liable, the principal's rights and liabilities with respect to restitution because of a payment in discharge of the liability are the same as if he [or she] had acted personally, except
>
> (a) in an action between himself [or herself] and the agent, and

533

(b) in an action between himself [or herself] and a person also vicariously liable for the agent's tort or a person colluding with the agent in the commission of the tort.

RESTATEMENT OF RESTITUTION § 87 (1937).

¶ 19. Again, the logic of this statement comports with the policy goal of respondeat superior to provide an alternate source of recovery for injured parties. In an action between an employer and a person colluding with the agent in the commission of a tort against the employer, the employer is the injured party, not the employee and, certainly, not the employee's cohorts. So applying it in these instances would defeat a policy goal of the doctrine.

█

¶ 20. We agree with the Restatement and conclude that a person or company colluding with a liable employee is no less liable for that act just because it is not itself an employee. We thus hold that Vinton and Streu cannot use the respondeat superior doctrine to avoid liability to Cape.

¶ 21. Beaudoin, Streu and Vinton all hung their hats on respondeat superior to argue that Cape is at fault. That theory fails. Therefore we reverse the grant of summary judgment and remand for proceeding not inconsistent with this opinion.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.