Marilyn M. BROWN and Delores M. Schwartz,
Plaintiffs-Appellants,†

DEAN HEALTH INSURANCE, INC.,
Conseco Insurance Company and
Kathleen Sebelius,
Involuntary Plaintiffs,

v.

ACUITY, A Mutual Insurance Company,
Parnell P. Burditt, American Alternative
Insurance Company and
Okauchee Fire Department,
Defendants-Respondents,

UTICA MUTUAL INSURANCE COMPANY,
Defendant.

Court of Appeals

*No. 2011AP583. Submitted on briefs April 12, 2012.
—Decided May 30, 2012.*

2012 WI App 66

(Also reported in 815 N.W.2d 719.)

† Petition for review filed.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Don C. Prachthauser* and *Keith R. Stachowiak* of *Murphy & Prachthauser, S.C.*, of Milwaukee.

On behalf of the defendants-respondents Acuity, a Mutual Insurance Company, and Parnell P. Burditt, the cause was submitted on the brief of *Lance S. Grady* and *Daniel K. Miller* of *Grady, Hayes & Neary, LLC*, of Waukesha.

On behalf of the defendants-respondents American Alternative Insurance Company and Okauchee Fire Department, the cause was submitted on the brief of *Bennett J. Brantmeier* and *Amanda J. Ramaker* of *Laitsch & Brantmeier, LLC*, of Jefferson.

Before Brown, C.J., Reilly and Gundrum, JJ.

¶ 1. BROWN, C.J. In this case, we must decide whether a volunteer firefighter was entitled to governmental immunity when he ran a red light while responding to an emergency call. Marilyn M. Brown and Delores M. Schwartz were injured in an accident when Parnell P. Burditt, a volunteer firefighter for the Okauchee Fire Department (OFD), struck their vehicle while going through a red light on his way to the fire station. Brown and Schwartz sued Burditt, the OFD, and their insurers for negligence. Both defendants claimed governmental immunity from the suit. Brown[1] argues that immunity does not apply because Burditt was not acting within the scope of his employment while traveling to his workplace. Alternatively, Brown contends that Burditt had a ministerial duty to obey the rules of the road rather than proceed through the red light. We disagree on both points and hold that Burditt was acting within the scope of his employment from the moment he left his house in response to an emergency call, and that his decision to go through the red light was a discretionary one entitled to immunity. We affirm.

¶ 2. On June 8, 2008, Burditt responded to a dispatch from the fire department. He did so in his personal vehicle, which was equipped with emergency

---

[1] We will refer to plantiffs-appellants Brown and Schwartz collectively as "Brown" throughout this opinion.

lights, but no siren, for such occasions. It was dark and raining and Burditt's emergency lights were activated when he entered a traffic intersection against a red light. He first looked north, saw no oncoming cars, and proceeded safely to the middle of the intersection. Then he looked south, saw one car, and waited until it pulled over to cross the rest of the intersection. At that point, he collided with a vehicle driven by Frank Brown. Brown and Schwartz were both passengers in that vehicle.

¶ 3. At the time of the accident, Burditt was a lieutenant with the OFD who also served as Emergency Medical Services Director. When responding to a call, he and other volunteers were required to obey the orders of commanding officers from the moment they received a dispatch. Burditt's car was equipped with a radio he could use to communicate with his superiors on the way to the fire station. Although Burditt usually reported to the fire station in response to a call, on some occasions involving medical emergencies, he would report directly to the scene. On the day in question, he was reporting to the fire station and would have received further instructions on arrival. Sometimes, if there was a greater than necessary response to an emergency, volunteers might be sent home after they arrived at the station but before they were sent to the location of the emergency. So, Burditt could not have been certain that his assistance would be necessary before arriving at the station.

¶ 4. On February 8, 2010, Brown filed a complaint against Burditt, the OFD, and their insurers, alleging that Burditt's negligence was a substantial factor causing the collision.[2] Burditt moved for summary judg-

---

[2] The insurer of the second driver, Frank Brown, was also named as a defendant because the complaint alleged that his negligence was also a substantial factor in the collision.

ment, arguing that he was immune from personal liability for the accident pursuant to Wis. Stat. § 893.80(4) (2009–10)[3] because he was acting within the scope of his duties for the fire department when the accident occurred. After the trial court ruled in favor of Burditt, the OFD moved for summary judgment, alleging that it too was immune from liability pursuant to § 893.80(4). That motion was also granted. Brown appeals.

¶ 5. We review summary judgment motions de novo, applying the same methodology as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). The methodology is well known and we will not repeat it here except to say that summary judgment is only appropriate when there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2). Here, the parties agree that the relevant facts are undisputed, so we need only decide whether Burditt and the OFD were entitled to judgment as a matter of law.

¶ 6. We first address whether Burditt was acting in the scope of his employment when he ran the red light. Wis. Stat. § 893.80(4) states, in pertinent part, that "[n]o suit may be brought . . . against . . . [a] volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions." Brown argues that Burditt is not covered by governmental immunity because he had not yet re-

_____
[3] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

ported to the fire station when the accident occurred. He cites the "coming and going" rule outlined in *DeRuyter v. Wisconsin Electric Power Co.*, 200 Wis. 2d 349, 361, 546 N.W.2d 534 (Ct. App. 1996), *aff'd,* 211 Wis. 2d 169, 565 N.W.2d 118 (1997), which states that "only when the employer exercises *control over the method or route of the employee's travel* to or from work can the employee be said to be acting within his or her employment." (Emphasis added.) Because Burditt, rather than the OFD, chose the method and route of travel to arrive at the station, Brown contends that Burditt was not operating in the scope of his employment when the accident occurred.

¶ 7. As Burditt points out, *DeRuyter* is a respondeat superior case, which involves different considerations and interests from those present in a governmental immunity case. In respondeat superior cases, courts analyze whether an employer will be held liable for its employee's actions. The public policy behind such cases "is to place liability on the employer because, in the promotion of its work, it has control over the mode and manner of its employees' performance and therefore ought to be liable for injuries caused by its employees' conduct." *James Cape & Sons Co. ex rel. Polsky v. Streu Const. Co.*, 2009 WI App 144, ¶ 10, 321 Wis. 2d 522, 775 N.W.2d 277. In that context, it makes sense for the *DeRuyter* court to have focused on whether the employer had control.

■
¶ 8. The purpose of governmental immunity, in contrast, is to "protect public officers from being unduly hampered or intimidated in the discharge of their functions by threat of lawsuit or personal liability," and, to "ensure that courts will refuse to pass judgment on the policy decisions made by coordinate branches of

government." *Johnson v. City of Edgerton*, 207 Wis. 2d 343, 352, 558 N.W.2d 653 (Ct. App. 1996) (citations omitted). Thus, the issue in this case is not whether the OFD is liable for Burditt's actions, as it would be in a respondeat superior case, but whether Burditt's status as a volunteer firefighter shields him from liability for his discretionary actions while responding to an emergency call. The *DeRuyter* rule, based on employer control, is not relevant to that issue.

¶ 9. Unlike the usual employer-employee relationship that we find in many respondeat superior cases, Burditt's relationship with the OFD is nontraditional. When an emergency arises, the OFD calls on volunteers like Burditt, who are expected to respond, if possible, from wherever they are currently located. Although Burditt chooses the mode of transportation and the route he will take once a call comes in, it is the OFD that decides when a call goes out and to whom. Furthermore, once volunteers choose to respond to a call, they must obey the orders of their commanding officers. Thus, volunteer firefighters are actuated by a purpose to serve the fire department from the moment they choose to respond to an emergency call. Because of that, they are operating within the scope of their employment for the purposes of Wis. Stat. § 893.80(4) immunity.

¶ 10. Next, we consider whether Burditt's decision to run the red light was a discretionary act or a ministerial duty. Case law applying Wis. Stat. § 893.80(4) differentiates between the government's discretionary acts and its ministerial duties. *Willow Creek Ranch, LLC v. Town of Shelby*, 2000 WI 56, ¶¶ 25–27, 235 Wis. 2d 409, 611 N.W.2d 693. Discretionary acts are protected as an "exercise of legislative,

quasi-legislative, judicial or quasi-judicial functions," but ministerial duties are not. *See id.* A ministerial duty is defined as one that "is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Caraher v. City of Menomonie,* 2002 WI App 184, ¶ 18, 256 Wis. 2d 605, 649 N.W.2d 344 (quoting *Lister v. Board of Regents,* 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976)).

¶ 11. Brown alleges that Burditt had a ministerial duty not to run the red light because of WIS. STAT. § 346.03(3), which states that the operator of an emergency vehicle is not exempt from the WIS. STAT. § 346.37(1)(c) requirement to stop at a red light unless it is giving "both such visual signal and also an audible signal by means of a siren or exhaust whistle." *See* § 346.03(2)(b) & (3). Brown reasons that because Burditt's vehicle was not equipped with an audible signal that would satisfy § 346.03(3), he had a ministerial obligation not to proceed through the intersection against the red light. In support of that reasoning, Brown cites to *Estate of Cavanaugh v. Andrade,* 202 Wis. 2d 290, 550 N.W.2d 103 (1996), which, she claims, establishes that "the manner of driving under [§ ] 346.03 . . . [is] not considered discretionary."[4]

¶ 12. We agree with Brown that *Cavanaugh* drives the result in this case, but we disagree that it helps her. In *Cavanaugh,* as here, there were two defendants: a police officer and the city that employed

---

[4] Brown also cites to other cases involving traffic law exemptions for emergency vehicles, but none address the question of how governmental immunity applies to those exemptions.

him. *Cavanaugh*, 202 Wis. 2d at 295. While on duty, the officer initiated a high-speed chase of a vehicle that he had observed running a red light at a high rate of speed. *Id.* at 296. At one point, the officer saw that the vehicle had stalled in an intersection and he was able to get its license plate number. *Id.* At that time, the subject of the chase restarted his vehicle and the officer continued the chase. *Id.* After that, the subject of the chase sped through an intersection and collided with Cavanaugh's vehicle, killing Cavanaugh. *Id.*

¶ 13. Cavanaugh's father sued the city and the officer, both of whom claimed immunity under WIS. STAT. § 893.80(4). *Cavanaugh*, 202 Wis. 2d at 297–98. Pertinent to this case, the *Cavanaugh* court found that the officer was immune from liability for negligence in his discretionary decisions to initiate and continue the high-speed chase, but that if the officer had violated WIS. STAT. § 346.03(5) by failing to operate his vehicle with "due regard under the circumstances," the officer could be held liable for negligence based on a violation of that statute. *Cavanaugh*, 202 Wis. 2d at 319. Importantly, the court explained that "nothing in § 346.03 provides that immunity afforded to the discretionary decision to initiate or continue a pursuit is subsumed by § 346.03(5). Although most states have adopted emergency-vehicle-operations statutes that are substantially similar to § 346.03, it does not follow that the state's immunity provisions are rendered inapplicable." *Cavanaugh*, 202 Wis. 2d at 316–17 (footnote omitted).

¶ 14. We read the above quoted statement in *Cavanaugh* to stand for the proposition that the government and its employees may have various forms of liability under WIS. STAT. § 346.03, but the statute does not supersede WIS. STAT. § 893.80(4) immunity for discretionary decisions. In that case, it meant that the

245

officer was not liable for the discretionary decisions to either pursue the vehicle or to speed. *Cavanaugh*, 202 Wis. 2d at 316, 319. In other words, the specific violations that were inherent in the decision to initiate or continue a high-speed chase were immune from suit because they involved the exercise of discretion. *Id.* But once those decisions had been made, the officer had to operate his vehicle with "due regard under the circumstances" or be subject to liability for failing to do so. *Id.* In that sense, violating § 346.03(5), which is equivalent to a negligence standard, could be the basis of a tort action. *See id.*

¶ 15. Applying *Cavanaugh* to this case, Burditt's decision to proceed through the intersection against the red light, like the decision to initiate and continue a high-speed chase, was discretionary. So, Burditt, like the officer in *Cavanaugh*, is immune from liability for negligence based on that decision. And since there is no allegation that his conduct other than the decision to proceed through the intersection was in any way negligent, a "due regard under the circumstances" analysis need not be conducted.

¶ 16. Our rationale comports with the reasoning employed by the supreme court in *Lodl v. Progressive Northern Insurance Co.*, 2002 WI 71, 253 Wis. 2d 323, 646 N.W.2d 314. In that case, a police officer was immune from suit for negligence in his direction of traffic at an intersection after a storm rendered the traffic control signals in the intersection inoperable. *Id.*, ¶¶ 2, 5. The plaintiff argued that the officer had a ministerial duty to perform manual traffic control at the scene. *Id.*, ¶ 12. That ministerial duty was allegedly based on Wis. Stat. § 346.40, a statute describing how traffic control should be conducted using a whistle, and a police department manual describing how manual

traffic control should be conducted, and the known danger that arose when the signal was not functioning. *Lodl*, 253 Wis. 2d 323, ¶¶ 12, 27–28.

¶ 17. The *Lodl* court held that immunity applied despite the statute because the statute did not "direct law enforcement officers to perform manual traffic control in any given situation, or otherwise remove officer discretion over the decision to undertake manual traffic control." *Id.*, ¶ 27. And it further found that the department policy did not preclude immunity because it did not "eliminate the officer's discretion to decide when or whether to undertake manual traffic control in the first instance." *Id.*, ¶ 31. Likewise, in this case, WIS. STAT. § 346.03(3) does not remove Burditt's discretion as to whether to proceed into an intersection. It merely lists the conditions under which the sanctions for violating the rules of the road will be rendered inapplicable.

¶ 18. It is undisputed that Burditt failed to meet those conditions—but it simply does not follow that he is also liable for negligence in his decision to proceed through the intersection. Burditt still has immunity from a *tort* action. However, because he did not use an audible signal in addition to a visual signal, thus failing to comply with WIS. STAT. § 346.03(3), he subjected himself to the penalty for violating WIS. STAT. § 346.37(1)(c), which is a forfeiture of between twenty and one hundred dollars.[5] *See* WIS. STAT. § 346.43(1)(b).

*By the Court.*—Judgments affirmed.

---

[5] Burditt's deposition testimony indicates that he received and paid a citation for "failure to yield" based on the collision.